OPINION OF THE COURT
Elizabeth W. Pine, J.
Plaintiff, in the instant action, sues for declaratory and injunctive relief against the implementation of an agency shop fee deduction, on her own behalf and on behalf of a class of instructional personnel employed in defendant school district. *254 The matter is before this court on cross motions for summary-judgment.[1]
This case presents the question whether the refund procedure agreed to by defendant board of education and the local teacher’s association, in connection with the assessment of agency shop fees, is in compliance with applicable statutory and constitutional provisions.
Shortly after the decision of the United States Supreme Court in Abood v Detroit Bd. of Educ. (431 US 209), and to overcome prior decisional law in this State striking down agency shop fees in connection with public employment (see, e.g., Matter of Farrigan v Helsby, 42 AD2d 265), the New York State Legislature enacted amendments to the Taylor Law (Civil Service Law, art 14) to bring the assessment of agency fees within the permissible scope of collective bargaining for public employees (L 1977, chs 677, 678; L 1978, ch 122).
Section 208 (subd 3, par [b]) of the Civil Service Law, the provision applicable herein, was last amended in 1977 and provides: "(b) Notwithstanding provisions of and restrictions of sections two hundred two and two hundred nine-a of this article, section ninety-three-b of the general municipal law and section six-a of the state finance law, every employee organization that has been recognized or certified as the exclusive representative of employees within a negotiating unit of other than state employees shall be entitled to negotiate as part of any agreement entered into pursuant to this article to have deductions[2] from the wage or salary of employees of such negotiating unit who are not members of said employee organization the amount equivalent to the dues levied by such employee organization and the fiscal or disbursing officer of the local government or authority involved shall make such deductions and transmit the sum so deducted to such employee organization. Provided, however, that the foregoing provisions of this subdivision shall only be applicable in the case of an employee organization which has established and maintained a procedure providing for the refund to any employee demanding the return [of] any part of an agency shop fee deduction which represents the employee’s pro rata share of expenditures by the organization in aid of activities *255 or causes of a political or ideological nature only incidentally related to terms and conditions of employment.”
To the extent that the papers submitted by plaintiff and by defendant La Marca agree concerning the text of the contract establishing the agency shop fee refund provision at issue here, its terms are set out below:
"Any person making service fee payments to the Union in lieu of dues under agency fee provisions in the Union’s Collective Bargaining Agreement, shall have the right to object to the expenditure of his/her portion of any part of an agency shop fee deduction which represents the employee’s pro-rat[a] share, if any, of expenditures by the organization in aid of activities or cause[s] of a political or ideological nature only incidentally related to terms and conditions of employment.
"Such objections shall be made, if at all, by the objector individually notifying the Union President of his/her objection by registered or certified mail, during the period between September 1 — 15 of each year.
"If the objector is not satisñed with the decision of the President an appeal may be taken by such person to the Union Executive Cabinet within thirty (30) days following such decision (receipt of such rebate or receipt of notice of such allocation). The Executive Cabinet shall render a decision within thirty (30) days after hearing the appeal” (emphasis in original).
The concluding sentence of such refund procedure, according to plaintiffs papers, further provides that "[f]or the 1977-78 school year, objections shall be made, if at all, during the period between Nov. 15-30.” According to the papers of defendant local union president, however, this last sentence reads "[f]or the 1977-78 school year, objections shall be made, if at all, until December 22, 1977.” While this discrepancy technically creates an issue of fact, the issue is one which need not be tried, since even if plaintiffs version of the concluding sentence of the refund procedure is correct, such language does not entitle plaintiff to any additional relief.
It is conceded by defendant La Marca that, in implementing the refund procedure, the union forwarded a notice to each person objecting to the agency shop fee, in the following form: "This is to acknowledge receipt of your letter dated
.. Only at "The GCTA budget year ends on *256 that time will we be able to determine the actual monies spent and in what areas.
"If you desire, of course, I will keep your letter on file until such time the budget has been properly audited for the 1977-78 budget year.
"At that time, please list exactly what your specific objections are and I will be [hajppy to respond to them. Sincerely yours” (emphasis added).
The papers of defendant La Marca show that, out of 402 teachers in the bargaining unit, 380 are members of the Gates-Chili Teachers Association (GCTA), the local union. Consequently, the agency shop fee provision actually affected only 22 of the 402 members of the bargaining unit, and, as of the deadline for filing objections for the contract year in question, 12 of those 22 persons had filed refund requests.
Plaintiff and some 21 others are entitled to declaratory and injunctive relief in this action. However — while plaintiff did commence this action as a class action on behalf of herself and "all other instructional personnel employed by the Board of Education of the Gates Chili Central School District, similarly situated” — it does not appear, from the papers before this court, that plaintiff has yet moved for class certification (CPLR 902), nor is it clear that the alleged class is sufficiently large to warrant such relief. However, defendant La Marca, as the exclusive collective bargaining agent, owes a duty to the nonunion members of plaintiff’s bargaining unit, and his understanding of this is implicit in his answering papers in this action. While such other nonunion members have not formally appeared, and class certification has not been granted, any relief afforded plaintiff herein should be equally available to the other nonunion members of her bargaining unit. Defendant La Marca is accordingly directed to notify the court, within 20 days after this decision, whether he will stipulate to comply with the direction of this court with respect to the other nonunion members of plaintiff’s bargaining unit. In the event that he does not so stipulate, this decision shall be without prejudice to plaintiff’s right to move to reopen the judgment, to move for class certification, and shall further be without prejudice to the right of each nonunion member of plaintiff’s bargaining unit to be joined or to intervene in this action individually; and further, in such event, defendant La Marca shall mail a copy of the decision herein, and of all subsequent orders and other papers in this *257 action, to each such nonunion member of plaintiffs bargaining unit at his last known business address.
The court will separately consider each aspect of the refund procedure here at issue.
I. Treatment of Charges for State and National Affiliates as Exempt from Refund Procedure.
Of the $133.80 agency shop fee collected by defendant La Marca for the local union (GCTA), only $20.60 is actually retained by the GCTA, the largest part of the fee being forwarded to other affiliates — the national affiliate, American Federation of Teachers (AFT), receiving $28.20, and the State affiliate, New York State United Teachers (NYSUT) receiving $85. Defendant La Marca maintains that, while he should be entitled to collect an agency shop fee of $133.80 from each nonunion member of the bargaining unit, only the $20.60 remaining with the GCTA should even come under the scrutiny of the refund procedure required by Abood v Detroit Bd. of Educ. (431 US 209, supra) and by section 208 (subd 3, par [b]) of the Civil Service Law. Counsel for defendant La Marca urges here, as he did unsuccessfully in Matter of United Univ. Professions v Eson (11 PERB par 3068), that the agency fee moneys it receives and transfers to its parent organizations, NYSUT and AFT, should be treated unconditionally as purchases of services — without inquiry into whether any part of such moneys are expended "in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment.” Were the court to accept such reasoning, any refund procedure — however fair on its face — could be subverted by a reallocation of dues between union locals and their State and national affiliates, and would be an empty gesture. If the State and national affiliates are to receive agency shop fees from their locals, they must undertake the correlative duty of providing, to the local, the information necessary for it to implement a refund procedure covering those portions of the agency shop fee earmarked for the State and national affiliates. If, within 90 days after the date of this decision, defendant La Marca is unable to secure the co-operation of such State and national affiliates in providing the information required by this decision, and to bring the funds earmarked for such affiliates within the scrutiny of the refund procedure, he shall refund to each objecting nonunion *258 member the pro rata share of the agency shop fee collected on behalf of such affiliates.
II. Procedural Issues: Specificity of Objections;
Preliminary Disclosure and Burden of Proof; Form of and Time Limitations for Objections; Impartial Review
As defendant La Marca correctly notes, the objections of plaintiff (and of the other persons seeking refunds) were "all stated in the most general of terms.” The objections, like plaintiff’s, basically request the return of "any” or "all” moneys due; while such objections do not expressly state that they are made against expenditures "in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment” (Civil Service Law, § 208, subd 3, par [b]), they are broad enough to be so construed.[3]
It is clearly impermissible for defendant La Marca to require a person objecting to such expenditures to "list exactly what your objections are”. An expression of generalized opposition to political or ideological expenditures unrelated to collective bargaining is all that may be demanded in a refund procedure. "To require greater specificity would confront an individual employee with the dilemma of relinquishing either his right to withhold his support of ideological causes to which he objects or his freedom to maintain his own beliefs without public disclosure. It would also place on each employee the considerable burden of monitoring all of the numerous and shifting expenditures made by the Union that are unrelated to its duties as exclusive bargaining representative.” (Abood v Detroit Bd. of Educ., 431 US, at p 241, supra; see, also, Railway Clerks v Allen, 373 US 113, 118.)
The union, if it is to be permitted to collect agency shop fees from nonunion members of the bargaining unit, must bear the burden of justifying its assessment and establishing that the fees are not being expended for impermissible purposes: "Since the unions possess the facts and records from *259 which the proportion of political to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion. Absolute precision in the calculation of such proportion is not, of course, to be expected or required; we are mindful of the difficult accounting problems that may arise. And no decree would be proper which appeared likely to infringe the unions’ right to expend uniform exactions under the union-shop agreement in support of activities germane to collective bargaining and, as well, to expend nondissenters’ such exactions in support of political activities.” (Railway Clerks v Allen, 373 US 113, 122, supra, quoted in Abood, 431 US, at p 239, n 40, supra.) There is no language in the refund procedure, and, evidently, no practice under it, by which the GCTA, NYSUT or AFT undertakes to meet this burden or to provide a basic accounting concerning the proportion borne by political and ideological expenditures to over-all union expenditures. In exchange for the right to receive agency shop fees from nonunion members, and based on each union affiliate’s unique access to the facts, each affiliate, through the auspices of the GCTA, should report separately its total political and ideological expenditures, and, in the event it deems some of these more than incidentally related to the terms and conditions of employment, the net proportion of such expenditures which it deems refundable pursuant to section 208 (subd 3, par [b]) of the Civil Service Law. Not until this obligation is undertaken can an agency shop fee refund procedure be fairly carried out.
The court rejects defendant’s argument that plaintiff, in the first instance, should be required to establish that the union actually made expenditures for political or ideological purposes, before she can be entitled to any declaratory or injunctive relief in this proceeding. At issue herein is the propriety of the refund procedure itself; the ultimate issue of whether plaintiff will be entitled to a refund, once an appropriate procedure has been developed, may well be resolved by operation of the refund procedure itself.
The court notes and rejects plaintiff’s argument that the refund procedure should be struck down because it requires the use of certified or registered mail for the filing of objections. Such a requirement is not an unreasonable one, and does not constitute a "substantial deterrent” to the exercise of the nonunion member’s right to file an objection. (Cf. Matter *260 of United Univ. Professions v Eson, 11 PERB par 3068, supra [striking down a provision requiring objecting nonunion member to pay half the cost of arbitration proceedings].)
Also unpersuasive (even assuming plaintiffs version of the last sentence of the refund procedure to be correct) is plaintiffs contention that the time limitation for the filing of objections under the refund procedure is so short as to restrict unduly the exercise of that right. Whether a different procedure would have been more reasonable is not the issue here. (See Matter of United Univ. Professions v Eson, supra.)[4]
Plaintiff further contends that the GCTA refund procedure, as currently drawn, fails to provide for an impartial tribunal for the determination of refund claims, and deprives plaintiff and others of property without due process of law. The GCTA refund procedure provides for the filing of objections and refund requests with the GCTA president, who is empowered to make the initial determination; an appeal then lies, from the decision of the president, to the GCTA executive cabinet. The refund procedure neither articulates nor alludes to any further method of review. In answer to plaintiffs due process claims, defendant La Marca urges that "upon information and belief, as a matter of law there is absolutely no requirement in either statutory or case law that mandates that a union provide an impartial tribunal to hear or adjudge the merits of an objection raised by an objecting agency shop fee payer” and further asserts that, in any event, a nonunion objector dissatisfied with a determination of the GCTA made under the refund procedure has recourse to the courts of this State.[5]
Defendant La Marca’s objections notwithstanding, there can be no doubt that a union acting under a special State *261 statute authorizing it to collect agency shop fees from persons who are neither members of the union nor willing contributors to it, must act within the limitations of the State due process clause (NY Const, art I, § 6), if not also within those of the Fourteenth Amendment. (See Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 157-163.) The availability of recourse, at some point in the procedure, to an impartial tribunal — if private property is to be taken under the authority of State law — is one of the clearest dictates of the due process clause.
Since the decision of this court already requires certain other modifications of the refund procedure adopted by defendants, the court will afford defendants an opportunity to reconsider and address themselves to plaintiff’s due process claims, and to submit proposed changes concerning this aspect of the refund procedure along with the others to be made in accordance with this decision. The observation of the Public Employment Relations Board in Eson, that "[u]nions enjoying an agency shop are well advised to establish appropriate mechanisms for the independent review of their determinations as to the amount of a refund” (Matter of United Univ. Professions v Eson, 11 PERB par 3068, at p 3106) is well taken.
The court declines to determine, at this time, whether a union official making a determination involving an agency shop fee assessed pursuant to the Civil Service Law is a "body or officer” whose acts would be necessarily subject to review in an article 78 proceeding. (CPLR 7802, subd [a]; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7802.01, at p 78-38, n 2.) The availability of such review, and, if it exists, an express reference to it in the terms of a refund procedure, would go a long way toward meeting the requirements of due process.
The court notes that it has considered and rejected plaintiff’s strained and unduly restrictive interpretation of section 208 (subd 3, par [b]) of the Civil Service Law as barring any agency shop fee assessment unless the union’s refund procedure, when first adopted, is unblemished by any defects. So stringent a "condition precedent” reading of this statute would defeat the purpose of the Legislature in adopting it: "If [defendant] is required to establish and maintain a valid refund procedure, and to apply it to agency shop fee payments received by it from the inception of its original procedure, [plaintiff] and [her] fellow employees who demand a refund of a portion of their agency shop fee payments will contribute no *262 more to the support of respondent than the Legislature intended that they should” (Matter of United Univ. Professions v Eson, 11 PERB par 3068, at p 3107, supra).

. Defendant board of education has not joined in either motion for summary judgment, and did not appear in this matter.

. So in original. Probably should read deducted.

. Plaintiff in this action does not contest the constitutionality of section 208 (subd 3, par [b]) of the Civil Service Law, which, based upon language in Abood, defines the narrow basis upon which a partial refund may be available.
Also not presented and not decided in the instant case is any issue concerning the compliance of GCTA, NYSUT or AFT with any applicable "system of election campaign regulation” in the expenditure of agency shop fees. (Cf. Federal Election Comm. v National Educ. Assn., 457 F Supp 1102, 1106-1107.)

. The court also notes that similar time restrictions appeared in the refund procedure challenged in Abood.

. At oral argument only, and not in the papers submitted in this matter, counsel for defendant La Marca further asserted, perhaps inadvertently, that the refund procedure should be upheld because an additional impartial forum is available to review fee assessment claims — the Public Employment Relations Board.
The court notes that, in the Eson case, recently before the Public Employment Relations Board, the same attorney took the seemingly irreconcilable position that PERB has jurisdiction only to determine whether there is a valid refund procedure. Counsel’s position, in the Eson case at least, appears to have been that if PERB determines that a valid refund procedure exists, it must dismiss any remaining claims concerning the refund procedure for lack of jurisdiction; presumably, counsel’s position — in that forum — was that questions involving the sufficiency of moneys refunded (after the refund procedure had been involved and exhausted) would have to be litigated in court.